UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PAUL ANDREW TORFASON,<br><br>Plaintiff,<br><br>v.<br><br>STEVE BERNAL, et al.,<br><br>Defendants. | Case No. 20-cv-07037-JSW<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; ON PENDING MOTIONS; DIRECTING DEFENDANTS TO EXPLAIN FAILURE TO FILE REPLY BRIEF**<br><br>Re: Dkt. Nos. 46, 70, 77, 82 |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights case under 42 U.S.C. § 1983 against the County of Monterey, Monterey County Sheriff Steve Bernal, Deputy Sullivan, Deputy Lowe, and several other unnamed officials at the Monterey County Jail ("Jail") where Plaintiff was formerly housed. The operative complaint is the Third Amended Complaint ("TAC") dated June 17, 2022.[1] (ECF No. 33.) These four named Defendants (hereinafter "Defendants" unless otherwise specified) filed a motion for summary judgment (ECF No. 46), Plaintiff filed an opposition (ECF No. 72).) Defendants did not file a reply brief.[2] For the reasons discussed below, the motion for summary judgment is GRANTED. The other pending motions are addressed below. For the reasons discussed below, the motion for summary judgment is GRANTED. The other pending motions are also addressed below.

## BACKGROUND

Plaintiff alleges in his verified TAC the following: He was incarcerated at the Jail from 2019 to 2021. During that time, the Jail had a policy and practice of housing inmates with a

---

[1] Plaintiff subsequently filed a fourth amended complaint, which he erroneously titled "Third Amended Complaint." (ECF No. 69.) That pleading is addressed below.
[2] Defendants were ordered to file a reply brief. (ECF No. 27 at 2 ("Defendants *shall* file a reply brief no later than 14 days after the opposition is filed.") (emphasis added).)

1    history of sex offenses, such as himself, together with "general population" inmates affiliated with
2    gangs. Sex offenders are more likely to be assaulted than general population inmates, a fact
3    known to Defendant Sheriff Bernal and other unnamed supervisors for some time prior to the date
4    Plaintiff was assaulted, on August 5, 2020, by an inmate named Sampognaro. Sampognaro
5    "viciously" beat Plaintiff for three minutes, causing contusions, lacerations, swelling in his face,
6    head, and body, and a concussion. Two deputies were assigned to that area ("dorm") of the Jail at
7    that time: Defendant Deputy Sullivan was the "floor warden," and Deputy Lowe was assigned to
8    the tower. After the assault, Sullivan took Plaintiff's statement. According to Plaintiff, Sullivan
9    told him that Lowe was not in the tower when the assault began, which meant that no one saw it or
10   alerted other deputies to come stop it when it began. It was against Jail policy for any deputy to
11   leave the tower without having another deputy relieve them.
12        Defendants present evidence disputing the foregoing account as follows. They submit the
13   Jail policy on housing, which sets forth three tiers of housing: maximum, medium, and minimum.
14   (ECF No. 46-4 at 7-8.) Included in maximum security are inmates in "protective custody," who
15   are defined inmates with a higher risk of being assaulted by other inmates based upon their
16   "charge, gang affiliation, sexual preference, occupation or inmate informants [sic]." (*Id.* at 7.) In
17   practice, these inmates are also called "sensitive needs" inmates, and they include "homosexuals,
18   inmates charged with sex crimes, inmates charged with crimes against children, gang dropouts,
19   informants and inmates suspected by other inmates of being informants, and inmates who are
20   easily taken advantage of for various reasons." (ECF No. 46-4 at 4; *see also* ECF Nos. 46-2 at 3;
21   46-3 at 3.) Plaintiff and Sampognaro were sensitive needs inmates housed in B-Dorm, which
22   under the policy was designated for medium security inmates. (ECF No. 46-4 at 9.) However, at
23   the time of the assault, the Jail used B-Dorm for sensitive needs inmates who tested positive for
24   COVID-19. (ECF Nos. 46-2 at 3; 46-3 at 3.)
25        Plaintiff was a sensitive needs inmate because of his charges for sex offenses against
26   children, and Sampognaro was a sensitive needs inmate based upon his "classification during his
27   prior incarcerations as a sensitive needs inmate, as well as his request at booking that he be
28   assigned to protective custody." (ECF No. 46-4 at 4.) Plaintiff asserts in his opposition that

1  Sampognaro was an active or former gang member, although he submits no evidence to that
2  effect.
3      Defendants present evidence Sampognaro had no record of fights at the Jail since his
4  arrival in 2020, or during his previous stay at the Jail in 2019. (ECF No. 46-4 at 5.) Nor was there
5  any history of any threats or violence between Sampognaro and Plaintiff. (*Id.*) Plaintiff asserts
6  that Sampognaro had committed acts of violence outside of those Jail stays, but he provides no
7  evidence to that effect. (*Id.*)
8      Defendants present evidence that Deputy Lowe was assigned to "Tower 7," which
9  overlooked Plaintiff's housing area, on the morning of the assault, but when the assault took place,
10 Lowe had moved to "Tower 2" and a different deputy had taken over "Tower 7." Lowe states that
11 Tower 7 was staffed during the assault. Sullivan does not recall telling Plaintiff otherwise.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id*.

### II. Analysis

Plaintiff's claim is that Defendants did not adequately safeguard him from being assaulted

3

1  by Sampognaro. Because Plaintiff was a pretrial detainee at the time of the assault, his failure-to-

2  protect claims against Defendants fall under the Due Process Clause of the Fourteenth

3  Amendment. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc). The

4  elements of a pretrial detainee's due process failure-to-protect claim are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* (footnote omitted). With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case. *Id.* The pretrial detainee need not "prove an individual defendant's subjective intent to punish," but must prove "more than negligence -- something akin to reckless disregard." *Id.* at 1070-71.

   1. <u>Defendant Lowe</u>

Plaintiff agrees Lowe was not involved or culpable, and wishes to dismiss his claims against him. Summary judgment will be granted in favor of Lowe.

   2. <u>Defendant Sullivan</u>

The only allegation Plaintiff makes in the TAC against Sullivan is that he took Plaintiff's statement after the incident. There is no allegation that he failed to prevent the assault on Plaintiff or had any reason to know that the assault would take place. Simply taking Plaintiff's statement after the assault had not causal effect on the assault, and it certainly does not amount to an objectively unreasonable failure to abate the risk of the assault.

In his opposition, Plaintiff alleges that Sullivan missed a required round of walking through housing unit on the day he was assaulted. Plaintiff does not make this allegation in the TAC or other pleadings, nor does he present any evidence that Sullivan missed his round. Without any such evidence, whether he missed a round is not a triable factual question; Plaintiff's

1 speculation or hearsay that Sullivan missed his round is not sufficient. Consequently, there are no
2 triable factual questions as to whether Sullivan violated Plaintiff's due process right to safety.

        3. <u>Sheriff Bernal and Monterey County</u>

Plaintiff also names Sheriff Bernal and Monterey County as Defendants.

Plaintiff does not allege Sheriff Bernal had any personal involvement in the events on the day of the assault. Presumably, he sues Bernal on the theory that as a supervisor who oversaw the Jail and its operations, he is liable for Plaintiff being assaulted. To be liable for unsafe conditions, a supervisor must have the requisite mental state vis a vis the risk that his or her actions (e.g. substandard training, supervision, policy creation) would cause inmates harm, and there must be a causal connection between the supervisor's actions and the plaintiff's harm. *Jeffers v. Gomez*, 267 F.3d 895, 914-16 (9th Cir. 2001) (addressing supervisorial liability under the Eighth Amendment for unsafe prison conditions). Under the Fourteenth Amendment applicable to pretrial detainees, as discussed above, the required mental state is objective unreasonableness. Therefore, to be liable as a supervisor for Plaintiff's assault, Bernal's supervisorial actions --- in this case the creation, implementation, and/or supervision of the housing policies and practices --- must have amounted to objectively unreasonable failure to abate the risk that Plaintiff would be assaulted, and these actions must have actually caused the assault on Plaintiff. To succeed on his claim against Monterey County, Plaintiff must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

The claims against Bernal and Monterey County both rest on the theory that the housing policy and practices at the Jail created an objectively unreasonable risk that Plaintiff would be assaulted. Under the policy and practices at the Jail, Plaintiff was a "protective custody" or "sensitive needs" inmate because his charges for sex offenses against a minor made him especially vulnerable to assault from other inmates. Sampognaro was also a sensitive needs inmate because he had been in his prior stay in the Jail and had requested that designation again. This did not, in

and of itself, create an unreasonable risk of assault on Plaintiff. There is no evidence as to why he had been a sensitive needs inmate previously.

Plaintiff argues the risk was created by the practice of allowing gang members and former members to be housed with him. Plaintiff alleges Sampognaro was gang-affiliated, but there is no evidence to this effect. Nevertheless, even assuming for purposes of summary judgment that Sampognaro had been or still was affiliated with a gang, this fact alone did not make it "obvious" to a reasonable official that he would assault Plaintiff. *See Castro*, 833 F.3d at 1068. Under the Jail policy and practice, as a sensitive needs inmate, he would have only had gang involvement as a gang drop-out or informant, who, like other sensitive needs inmates, had a high risk of being assaulted. There is no evidence that people who drop out from or inform on gangs are more likely than other inmates to be violent towards sex offenders like Plaintiff. Indeed, in many instances, former gang members may be more inclined to reform and therefore be less likely to commit assault. There is no evidence that Sampognaro was dangerous simply because he was a gang drop-out and/or informant. Furthermore, the other evidence about Sampognaro made it reasonable to house him with Plaintiff. Sampognaro had not been involved in any fights during his time at the Jail, or during his most recent previous incarceration there in 2019. There is also no evidence that he and Sampognaro had any history of animosity with Plaintiff. Under these circumstances, there is no triable factual issue that, if resolved in Plaintiff's favor, would show that Jail policy and practices under which Sampognaro and Plaintiff were housed in the same unit posed an objectively unreasonable risk that Plaintiff would be assaulted.

Plaintiff also argues that Defendants are at fault because they violated Jail policy by housing him in a medium-security unit (B-Dorm) instead of a maximum-security unit. As discussed above, under the written policy, B-Dorm was a medium-security unit not used for sensitive needs inmates, but at the time Plaintiff was assaulted, it was used for sensitive needs inmates who tested positive for COVID-19. There is no evidence that this apparent repurposing of B-Dorm during the pandemic endangered Plaintiff. The evidence shows that the unit was all "sensitive needs" inmates, including Plaintiff and Sampognaro. Had the Jail housed sensitive inmates in a maximum-security unit, Plaintiff and Sampognaro would have still been housed

1    together. There is no evidence or assertion that anything about being in the B-Dorm as opposed to
2    another unit in the facility caused the assault.
3          Plaintiff also alleges in his opposition that Sampognaro murdered his father after his
4    release in 2020. He does not present any evidence of this, or evidence that it was known to
5    Defendants. He also speculates that Sampognaro may have committed other (unspecified) acts of
6    violence besides fights in the jail. This speculation and lack of evidence does not create a triable
7    factual issue. Plaintiff asserts he asked Defendants for Sampognaro's records and they declined
8    without an order from the court. Plaintiff did not and does not seek such an order, nor is it clear
9    what records he seeks or the authority that entitles him to them.
10         Plaintiff also alleges in his declaration supporting his opposition problems with his medical
11   care following the assault. He does not make such allegations or claims in the TAC, nor does he
12   name any of the allegedly responsible officials as Defendants. Any medical claims are therefore
13   not part of this case, although this does not prevent Plaintiff from bringing such claims in a new
14   case in the future.
15         There are no triable factual issues that, if resolved in Plaintiff's favor by a reasonable fact-
16   finder, would establish that Bernal or the County of Monterey violated Plaintiff's due process
17   rights because of an unreasonable policy or practice, or other actions or omissions, that created or
18   disregarded a substantial risk that Plaintiff would be assaulted. Consequently, Bernal and
19   Monterey County are also entitled to summary judgment.

20   **III.**   **Motions**

21         Another amended complaint erroneously titled the "Third Amended Complaint," but really
22   should be entitled the Fourth Amended Complaint ("FAC"), was filed on December 20, 2022.
23   (ECF No. 69.) The FAC is identical in all respects to the TAC except two: Deputy Mueller is
24   added as a named Defendant, and all the allegations against Deputy Lowe in the TAC are replaced
25   by allegations against Mueller in the FAC. Plaintiff has also filed a motion for service of the FAC
26   upon Mueller. (ECF No. 70). The motion is DENIED. The FAC alleges Sullivan told Plaintiff
27   Mueller was not in his post at Tower 7 when the altercation happened. This is hearsay, and
28   Defendants' evidence shows that the Tower 7 was staffed at the time of the altercation.

1 Consequently, there is no triable issue as to whether Tower 7 was staffed or Mueller played any

2 role in endangering Plaintiff.  Allowing Plaintiff to amend his complaint for the fourth time, after

3 Defendants moved for summary judgment, and to add a Defendant against whom the evidence

4 shows did not do anything to endanger Plaintiff, would be futile, unduly prejudicial to Mueller,

5 and ultimately a waste of judicial resources.  The motion to serve Mueller is DENIED.

6 Plaintiff's moves for an order directing prison officials to allow him to view the video of

7 the altercation.  The video was not part of the above analysis.  Defendants are entitled to summary

8 judgment, therefore, even when all facts Plaintiff alleged in describing the assault are assumed to

9 be true.  Consequently, viewing the video was not necessary for opposing the motion for summary

10 judgment, and the motion is DENIED.  (ECF No. 77.)

11 Plaintiff's motion for appointment of counsel is also DENIED (ECF No. 82) because there

12 is no right to counsel in a civil case, nor does the Court have attorneys to appoint to represent

13 Plaintiff.  Moreover, Plaintiff was able to present and prosecute his claims, and therefore the

14 interests of justice did not require him to have counsel.

15 **CONCLUSION**

16 For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 46) is

17 GRANTED.  Plaintiff's motions (ECF Nos. 70, 77, 82) are DENIED.  Within five days of the date

18 this order is filed, Defendants shall file an explanation of why they did not brief file a reply brief.

19 The clerk shall enter judgment and close the file.

20 **IT IS SO ORDERED.**

21 Dated: July 10, 2023

JEFFREY S. WHITE
United States District Judge