UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PAUL ANDREW TORFASON,<br><br>Plaintiff,<br><br>v.<br><br>STEVE BERNAL, et al.,<br><br>Defendants. | Case No. 20-cv-07037-JSW<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Dkt. No. 88 |

Plaintiff, a California prisoner proceeding pro se, filed this civil rights case under 42 U.S.C. § 1983. Defendants' motion for summary judgment was granted. Plaintiff filed a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. (ECF No. 88.) A motion to alter or amend judgment under Rule 59(e) "not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (internal quotations and citation omitted) (en banc). Evidence is not newly discovered for purposes of a Rule 59(e) motion if it was available prior to the district court's ruling. *See Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011). A district court does not commit clear error warranting relief under Rule 59(e) when the question before it is a debatable one. *McDowell*, 197 F.3d at 1256 (district court did not abuse its discretion in denying reconsideration where question was debatable).

Plaintiff does assert newly discovered evidence that was not available prior to the Court's ruling, nor an intervening change in the law. Rather, he argues the Court erred in four respects, but none of these arguments persuade the Court it erred, let alone committed clear error warranting relief under Rule 59(e).

First, Plaintiff argues his affidavits created a genuine issue of fact. (ECF No. 88 at 1.) He

does not expand on this assertion to explain how or what triable issues were created. This argument does not establish error, let alone clear error.

Second, Plaintiff argues the Court erred in finding no triable issue on each element of his failure-to-protect claim. He states he "believes" he would have been able to present evidence Sampognaro had a history of violence and gang affiliation if Defendants had produced Sampognaro's "records."[1] (*Id.* at 2.) For the reasons explained in the Court's order, Sampognaro's prior gang affiliation was not relevant to whether Defendants Bernal or Monterey County were objectively unreasonable to Plaintiff's safety:

> [Even assuming for purposes of summary judgment that Sampognaro had been or still was affiliated with a gang, this fact alone did not make it "obvious" to a reasonable official that he would assault Plaintiff. *See Castro*, 833 F.3d at 1068. Under the Jail policy and practice, as a sensitive needs inmate, he would have only had gang involvement as a gang drop-out or informant, who, like other sensitive needs inmates, had a high risk of being assaulted. There is no evidence that people who drop out from or inform on gangs are more likely than other inmates to be violent towards sex offenders like Plaintiff. Indeed, in many instances, former gang members may be more inclined to reform and therefore be less likely to commit assault. There is no evidence that Sampognaro was dangerous simply because he was a gang drop-out and/or informant.

(ECF No. 85 at 5.) Plaintiff may disagree with that analysis, but he has not shown that it is not debatable or that it is clear error.

Moreover, even if Plaintiff could have produced evidence that contradicted the evidence that Sampognaro did not have a history of violence at the Jail, Plaintiff did not produce any

---

[1] Defendants objected to producing Sampognaro's records on the grounds of "third-party privacy rights, the official information privilege, and the need to protect the safety of inmates and corrections personnel." (ECF No. 52 at 5 (citing *Ochoa v. Superior Ct.*, 199 Cal. App. 4th 1274, 1280 (2011) ("There is a valid state interest in keeping certain prison inmate records confidential to (1) protect individuals, including informants inside and outside of prison, (2) ensure institutional security, and (3) encourage candor and complete disclosure of information concerning inmates from both public officials and private citizens.")).) In response, Plaintiff only submitted a partial citation to a non-binding decision without showing how it overcame Defendants' objection in this case. (ECF No. 71 at 2.) Defendants submitted a declaration by a Jail supervisor (who is not a Defendant) who had access to Sampognaro's "file" and stated it did not show any incidents of violence in Sampognaro's prior or current periods of incarceration before the assault on Plaintiff. (ECF No. 46-4 at ¶¶ 6, 11.) Even if Sampognaro's records had been produced *and* shown the supervisor's declaration was false, for the reasons explained below, evidence of Sampognaro's history of violence would not establish a triable issue that any of the Defendants were liable.

1  evidence that any of the Defendants was liable for placing housing him with Plaintiff.  Sherriff
2  Bernal could not be held liable for the actions of his subordinates simply because he was the
3  Sherriff.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding there is no respondeat
4  superior liability under Section 1983).  Rather, as explained in the summary judgment order,
5  Sherriff Bernal can only be held liable based upon his own personal actions (i.e. creating and
6  implementing the housing policy, training, and supervision) and Monterey County can only be
7  held liable based upon a policy that caused the housing placement.[2]  (ECF No. 85 at 4 (citing
8  *Jeffers v. Gomez*, 267 F.3d 895, 914-16 (9th Cir. 2001), and *Oviatt By and Through Waugh v.*
9  *Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).)  The evidence of the Jail's housing policy showed it
10  did not group inmates with a history of violence with sensitive needs inmates like Plaintiff.  As a
11  result, if Sampognaro had a known history of violence and was housed with Plaintiff, that would
12  run counter, not pursuant, to Jail housing policy.  Nor was there any evidence of any actions by
13  Bernal, including any training or supervisory actions, whatsoever, let alone any that caused
14  Plaintiff to be housed with Sampognaro.  Consequently, Plaintiff's argument does not show the
15  Court committed clear error in finding no triable issue that Defendants acted with objective
16  unreasonableness towards Plaintiff's safety.

17  Third, Plaintiff argues the Court credited the declaration of a Jail supervisor stating that
18  Sampognaro's "file" showed he had no violent incidents during this period of incarceration or the
19  prior one (ECF No. 46-4 at ¶ 11), but the Court failed to similarly credit "the affidavits Plaintiff
20  provided." (ECF No. 88 at 3.)  Plaintiff's affidavit in support of the opposition to summary
21  judgment does not refer to Sampognaro's record.  (ECF No. 72 at 20.)  In the *opposition brief*,
22  Plaintiff asserted Sampognaro had a history of violence and also committed violence after he was
23  released, but this assertion cannot be considered evidence because the opposition was unsworn.
24  (*Id.* at 11.)  The affidavit Plaintiff submitted from another inmate, John Fickas, does state
25  Sampognaro had a history of assaulting other inmates, but Mr. Fickas does not explain how he

---

[2] Neither the other Defendants in the operative Third Amended Complaint nor the official named as a Defendant in the proffered Fourth Amended Complaint were alleged to be involved in Plaintiff's housing placement.  (ECF Nos. 33, 69; *see also* ECF No. 85 at 4-5, 7-8.)

1  knew this to be the case. (*Id.* at 21.) By contrast, the jail supervisor's declaration indicates his

2  statement was based upon his review of Sampognaro's jail records.[3] (ECF No. 46-4 at ¶¶ 6, 11.)

3  In any event, for the reasons discussed above, the Court's decision did not depend on resolving

4  any dispute over whether Sampognaro had evidence of Sampognaro's history of violence would

5  not establish a triable issue that any of the Defendants sued by Plaintiff were liable.

6  Consequently, this argument does not establish clear error by the Court.

7  Fourth, Plaintiff asserts he and other sensitive needs inmates, including him, were housed

8  in medium-security unit before the COVID-19 pandemic began, contrary to Jail housing policy,

9  and if he and Sampognaro had been housed in the maximum-security unit as required by the

10  policy, they would have been in separate cells and not have encountered each other. (ECF No. 88

11  at 3-4.) To begin with, these assertions about the differing conditions in maximum security are

12  not evidence insofar as the reconsideration motion is not sworn, and if Plaintiff offered any

13  evidence of these assertions, it would not be "new" within the meaning of Rule 59(e) because

14  Plaintiff knew about it before the summary judgment order. In any event, Plaintiff indicates their

15  placement in medium security unit contravened Jail policy, which means, for the reasons

16  discussed above, the County, Bernal, and the other officials Plaintiff sues could not be held liable

17  for such placement.

18  //

19  //

---

[3] The declarant's representation regarding the contents of Sampognaro's files may fall under the hearsay exception for official records if it were offered to show the truth of the matter asserted – i.e. that Sampognaro did not in fact engage in prior violent incidents. It is not offered for that purpose, however, and it is admissible for the non-hearsay purpose of showing its effect upon the declarant's state of mind of not knowing that Sampognaro had a violent past.

4

For the reasons discussed above, Plaintiff has not shown grounds for relief under Rule 59(e) from the decision to grant Defendants' summary judgment motion.  Accordingly, his motion for reconsideration is DENIED.

This order terminates docket number 88.

**IT IS SO ORDERED.**

Dated: January 12, 2024

JEFFREY S. WHITE
United States District Judge